OPINION OF THE COURT
John R. Tenney, J.
Plaintiffs, Senator Martin S. Auer and Lawrence Sloane, have brought a motion to enforce a prior judgment of this court from a declaratory judgment action. (Auer v Dyson, 110 Misc 2d 943.) That action addressed the validity of two Power Authority of the State of New York (PASNY) bond resolutions which pledged all PASNY revenues from all of its projects. Plaintiffs contended that such a pledge violated sections 1001 and 1005 of the Public Authorities Law which require that hydroelectric power be distributed to rural and domestic customers at the lowest possible rates.
In the decision, the court outlined and ordered a solution which would validate the bond resolutions and still permit compliance with the statutes. PASNY was directed to establish a hydroelectric rate based on cost and was allowed to include a charge for depreciation of hydroelectric facilities and “such other factors which the exercise of business accounting principles would allow”. It was ex *275 pressly prohibited from including costs of nonhydroelectric projects in fixing the rate.
In order to establish the legality of the bond resolution, it was necessary to analyze and determine the guidelines the Power Authority was obligated to follow under the existing sections of the Public Authorities Law. The action raised the question of a conflict between the revenue pledging and the provision of the Public Authorities Law. In its decision, the court determined that the statutory obligation of PASNY was to furnish hydroelectric power at the lowest possible rate so as to encourage and increase rural and domestic use of electricity. The Power Authority was also directed to seek revenue from the sale of hydroelectric power to industrial sources “which was to be applied to reducing or establishing as low a rate as possible to domestic and rural users”.
PASNY has now established a new rate for hydroelectric power which it concedes includes a charge for debt service from nonhydroelectric projects. Plaintiffs bring this proceeding on the grounds that this charge is a violation of the declaratory judgment.
Defendants move to dismiss this motion on the ground that this issue can only be raised by a plenary action. The CPLR does not directly address the proper procedure for enforcing a declaratory judgment, and there is no other statutory authority. (Cf. CPLR art 52 for enforcement of money judgments.) The earlier cases seem to imply that a plenary action is necessary. (See, e.g., Dale Renting Corp. v Bard, 39 Misc 2d 266, affd 19 AD2d 799; Schulman v Schulman, 223 NYS2d 353.)
Professor David Siegel, while noting the older cases, has nevertheless advocated a simple motion as “a more facile procedure”. (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3001:6, p 359.) The Court of Appeals has at least impliedly accepted Siegel’s view. In Berlitz Pub. v Berlitz (37 NY2d 878), the court reached the merits of just such a motion without comment as to its procedural validity. “The fact that it reached the merits is indication that the Court finds the motion practice acceptable and is willing to spare the plaintiff the burden of a second action”. (Siegel, 1976 Supplementary *276 Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3001:6, 1983-1984 Pocket Part, p 71.)
The motion procedure is particularly appropriate in a case such as this. PASNY concedes its rate includes a charge for nonhydroelectric debt service. It also concedes that a court has jurisdiction “to determine in a post judgment proceeding whether the rights of a party declared in a prior judgment have been violated.” Its objection is based upon the argument that since there was no specific reference to the nonhydro projects, the decision did not cover them. This position is inconsistent with that taken earlier. In the original argument, the authority claimed it could utilize the cost of nonhydroelectric projects in reaching the lowest possible rate. The court stated that the lowest possible rate had to be established first. The court defined revenue available to the bondholders as “all funds of the authority after it has fulfilled all of its statutory obligations”. Then, if there was excessive revenue, it could be added to the general fund and used for legally permissible purposes. The decision expressly stated that PASNY’s attempt to construe sections 1010 and 1012 of the Public Authorities Law to mean that it could pool all of the revenue from all of the projects was incorrect.
“The argument that this means the projects shall be collectively self-supporting has no basis. It is PASNY’s attempt to extend its authority and use its revenues from financially successful projects to underwrite high cost or loss items. This may be a worthy purpose, but it is simply not authorized * * *
“PASNY is specifically prohibited from diverting revenue from the restricted hydropower unless it has met the policy requirement.” (Auer v Dyson, 110 Misc 2d, at p 951.)
A plenary hearing would serve no purpose since there is no issue of fact involved. The concession that there is a charge for nonhydro debt service included in the “lowest possible rate” is an admission of a direct violation of the judgment. There is little question that PASNY is aware of this violation. It has proposed legislation to overcome the effect of the decision. However, the New York State Legislature has not approved it as of this date. (Program Bill, § 207 proposes a provision to the Public Authorities Law *277 that “rates * * * for hydroelectric power * * * may include capital and operating charges * * * of any projects or programs of the authority”.)
A plenary action would result in further delay and would permit an extended violation of the court order. It is not appropriate in a matter of this nature.
PASNY also argues that it is not bound by the earlier judgment since the issue of rates was not before the court at that time. It contends that the sole issue was the validity of the bond resolutions and that any discussion of rates was gratuitous, advisory and nonbinding. This argument misses the whole point of the earlier decision and is actually contrary to PASNY’s vital interests.
In analyzing the bond resolutions, the decision necessarily reviewed and interpreted the relevant statutory provisions. A direct conflict between the pledge of all revenues and the obligation to obtain the lowest possible rate was noted. (Auer v Dyson, supra, p 947.) Literally construed, the lowest possible rate could be zero or less if sufficient revenue was raised from industrial hydroelectric users. Such a result would violate the revenue pledge and cause a default under the terms of the bonds since in no case could hydro revenues be used for the bondholders.
A contrary construction — allowing all revenues to be pooled — would violate the lowest possible rate requirement and also invalidate the resolutions. The decision resolved this conflict. The lowest possible rate was defined as cost, and excess industrial revenues could be pledged to retirement of the bonds. Thus, discussion and determination of the rate question was an integral part of the determination that the bonds were valid. If the rate portion of the decision were redacted, as PASNY in essence requests, that portion which upheld the bonds would also necessarily fail. PASNY surely cannot argue such a position. Hence, PASNY’s second argument is also without merit, and the plaintiff’s motion should be granted.
PASNY has 30 days to adjust the rates deleting the illegal charge to hydropower users. This should constitute no hardship since in its post argument brief (at p 2) PASNY states: “The Authority does, however, know the amount of proceeds from its bond issues that has been *278 applied to the former Greene County nuclear project so that it can calculate the amount of debt service costs associated with the financing of that inoperative project.”
Furthermore, any improper amounts received from rural and domestic consumers under this formula should be refunded within 90 days of this order.
If plaintiffs are contending that other illegal charges are being made to hydroelectric users within the framework of this decision, it may petition the court for appropriate additional relief.